IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FERALLOY CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | No. 09 C 1676 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| SPIG INDUSTRY, INC. and WADE COOK, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Feralloy Corporation ("Feralloy"), has filed a four count complaint against Spig Industry, Inc. ("Spig") and Wade Cook ("Cook") alleging breach of contract against Spig (Count I), unjust enrichment against Spig (Count II), account stated against Cook (Count III), and intentional misrepresentation against both defendants (Count IV). Defendants have moved to dismiss the complaint for lack of jurisdiction pursuant to 28 U.S.C. § 1332. Defendants have also moved to quash the return of service of the summons on the grounds that, (1) defendants are not subject to service of process within the Northern District of Illinois, and (2) defendants were not properly served with process. Alternatively, if these motions are denied, defendants have moved to transfer the instant case to the Western District of Virginia. As a final alternative, defendants have moved to dismiss Count III pursuant to Rule 12(b)(6) for failure to state a claim.[1] For the reasons set forth below, defendants' motion to dismiss for lack of personal jurisdiction is granted, and their remaining motions are denied as moot.

---

[1] Defendants originally filed a motion to dismiss the complaint in its entirety for failure to state a claim; however, they have since clarified in their papers that they seek only to dismiss Count III.

**BACKGROUND**

Feralloy, a steel processor, is a Delaware corporation with multiple offices nationwide, including an office in Charleston, South Carolina, a facility in Huber, South Carolina (collectively "Feralloy South Carolina" or "Feralloy Charleston"), and its headquarters in Chicago, Illinois. Spig, a manufacturer of steel highway guardrails, is a Virginia corporation with its principal place of business in Bristol, Virginia. Cook is a citizen of the State of Tennessee and the former general manager of Spig.

In the spring of 2008, the parties entered into an agreement to establish an open account whereby Spig would order rolled steel products from Feralloy using purchase orders. The parties dispute nearly all of the details of contract formation, including: how the parties first made contact; when and where the initial negotiating meeting took place; and to whom Spig sent its application for credit. In addition, Feralloy's various submissions conflict on some of these same issues.

The complaint is silent as to how the parties made initial contact. According to the affidavit of Michael Borzych ("Borzych"), Feralloy's Accounting Manager in Chicago, in the spring of 2008 Borzych had a telephone conversation with Cook in which Cook sought to arrange a meeting and establish a business relationship with Feralloy. In contrast, a document summarizing the Feralloy-Spig relationship attached to the affidavit of Jack Love ("Love"), Feralloy's Vice President of Finance and Chief Financial Officer, David Lippucci, Feralloy's Territory Sales Representative based in South Carolina, was the first to make contact with Cook and set up a location visit to Spig. Defendants, on the other hand, contend that Cook was the one who called Lippucci, and do not mention an early contact with Borzych.

2

Once initial contact was made, a series of discussions, meetings, and conversations followed. Although the parties disagree about the specifics of these events, they generally agree that Lippucci, Cook, and other Spig representatives met in the spring of 2008 to discuss Spig's steel needs and Spig's ability to finance its purchases. The parties also agree that in connection with the discussions, Cook executed a credit application in May 2008. A copy of the application is attached to the complaint. It was signed by Cook in Memphis, and the fax stamp at the top of the page indicates that it was sent to Lippucci at a North Carolina fax number. Feralloy claims that Cook submitted this application to Borzych in Chicago. Nevertheless, Borzych was responsible for reviewing and approving the credit application.

In the following months, Spig and Feralloy South Carolina negotiated the prices for the steel products. Lippucci sent Cook at least three detailed bids in June 2008, outlining the prices and specifications of the steel products Feralloy was prepared to offer Spig. The letterhead Lippucci used to send the bids states "Charleston Division" in large, bold type at the top of the page, and the bids indicate that the steel would be made available F.O.B. at Feralloy's facility in Huger, South Carolina.

Spig submitted to Feralloy Charleston its first of numerous purchase orders to Feralloy on June 10, 2008. The bills of lading accompanying each fulfilled order list the permanent post office address of the shipper as "Feralloy Charleston" located in Huger, South Carolina. Additionally, all of the invoices Feralloy sent in connection with the orders list "Feralloy South Carolina" as the sender and specify that Spig should remit payment to "Feralloy Charleston" to a Atlanta, Georgia P.O. Box. At the request of Feralloy, Spig sent its first four payments to

Feralloy in Chicago. It sent five additional payments to Feralloy Charleston at the Atlanta P.O. Box.

On July 8, 2008, Lippucci, Borzych, and two other representatives from Feralloy Charleston visited Spig's Bristol facility to discuss the growth potential of the Spig-Feralloy business relationship. Feralloy claims that during this meeting Cook represented that Spig had the financial backing of its German parent company, SPIG Schultzplanken-Produktions-GmbH & Co. KG ("Spig Germany"). Following that meeting, Spig continued to order more product from Feralloy, and Feralloy continued to meet these orders.

Towards the end of August 2008, the relationship between the parties began to sour. Feralloy's version of the events is that after making the first nine payments, Spig continued to order and accept steel from Feralloy, but failed to make additional timely and regular payments on the parties' open account. Spig traces the parties' problems to Feralloy's failure to provide conforming product. Spig claims that on approximately August 26, 2008, the Virginia Department of Transportation ("DOT") visited Spig's Virginia location and tested the steel supplied by Feralloy. The steel failed to meet the DOT's safety specifications. Cook immediately called Lippucci in South Carolina to notify him of the test results and to cancel Spig's purchase orders. Spig claims that Cook had at least 15 communications via email and telephone with Lippucci at Feralloy Charleston in attempts to resolve the parties' dispute. Feralloy claims that Cook also initiated numerous calls to Borzych at this office in Chicago to discuss Spig's outstanding account.

On December 23, 2008, Borzych and Love met with Cook and outlined for him a proposed payment plan designed to return Spig's credit account to good standing. On January 2,

2009, Love sent Cook a letter detailing the payment plan, requesting a guarantee from Spig Germany, and warning of possible legal action in the event of non-compliance.  On January 7, 2009, in a follow-up email, Cook told Borzych that Spig was not in a position to adhere to the proposed schedule, but that it would be willing to pay lump sums as it was able to and smaller sums in the interim.

In response, on January 19, 2009, Love sent a formal demand letter to Spig Germany.  Spig Germany did not respond.  Instead, Cook sent a letter to Love in Chicago on January 22, 2009, stating that he was in receipt of Love's letter to Spig Germany and that Spig was in no way associated with Spig Germany.  In this same letter, Cook proposed two alternative options for resolving the parties' contract dispute:  either (1) Spig would sell the Feralloy steel located at its Bristol facility on a consignment basis and make payments to Feralloy as it was able to sell the steel; or (2) Spig would declare force majeure, and all the steel not yet paid for would be made available for Feralloy to retrieve at its convenience.

A week later, Cook sent a follow-up email to Love to inquire which option Feralloy preferred.  On February 6, 2009, after getting no response to his alternative proposals from Feralloy, Cook sent a letter to Love declaring Spig's decision to declare force majeure.

On February 20, 2009, Spig's CFO and Controller, Denise Arrants ("Arrants"), called Love at his office in Chicago to inform him that Cook had been "let go" and to see if there was any way to resolve Spig's delinquency.  Thereafter, Arrants and Love corresponded several times in February and March over phone and email in an effort to salvage the parties' relationship.  Feralloy filed the instant suit soon after.

## DISCUSSION

*Personal Jurisdiction*

Defendants have moved to dismiss the complaint arguing that this court lacks personal jurisdiction over them. Plaintiff bears the burden of establishing a prima facie case of personal jurisdiction. Hyatt Int'l Corp. v. Coco, 302 F.3d 707, 713 (7th Cir. 2002). When determining whether personal jurisdiction exists over a defendant, "the allegations in the complaint are to be taken as true unless controverted by the defendants' affidavits and any conflicts in the affidavits are to be resolved in [the plaintiff's] favor." Turncock v. Cope, 816 F.2d 332, 333 (7th Cir. 1987).

This court has jurisdiction over a non-resident, non-consenting defendant in a diversity case if Illinois state courts would have jurisdiction. Purdue Research Found. v. Sanofi-Sythelabo, S.A., 338 F.3d 773, 779 (7th Cir. 2003). An Illinois state court has personal jurisdiction when authorized by: (1) the Illinois long-arm statute; (2) the Illinois Constitution; and (3) the Due Process Clause of the Federal Constitution. Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 939 (7th Cir. 2000). Illinois' long-arm statute authorizes courts to exercise jurisdiction to the fullest extent allowed by the Illinois and federal Constitutions. 735 ILCS 5/2-209(c); Hyatt, 302 F.3d at 714. Because there is no "operative difference" between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction, the inquiry collapses into an examination of whether jurisdiction over defendants complies with the test as set forth in International Shoe Co. v. Washington, 326 U.S. 310, 316 (U.S. 1945), which requires that

defendants have minimum contacts with Illinois "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice."

How that standard is applied depends on whether plaintiff is asserting "general" or "specific" jurisdiction. In the instant case, plaintiff asserts specific jurisdiction over defendants Spig and Cook. Specific jurisdiction refers to instances where the suit arises "out of or [is] related to the defendant's contacts with the forum." Id. To determine whether a claim relates to or arises out of a party's contacts, "past contacts should either bear on the substantive legal dispute between the parties or relate to the operative facts of the case." GCIU-Employer Ret. Fund v. Goldfarb Corp., 565 F.3d 1018, 1023 (7th Cir. 2009). Thus, "the action must directly arise out of the specific contacts between the defendant and that forum state." RAR, Inc. v. Turner Diesel, 107 F.3d 1272, 1276 (7th Cir. 1997).

Personal jurisdiction over defendants is proper, therefore, only if they have purposely established minimum contacts within Illinois and those contacts are sufficient, under traditional standards, to make jurisdiction reasonable and fair under the circumstances. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). The crucial analysis is whether defendants should have reasonably anticipated being haled into court in Illinois because they purposely availed themselves of the privilege of conducting activities here. Id.

The existence of a contract between a resident of Illinois and an out-of-state defendant, standing alone, does not suffice to establish minimum contacts. Id. at 478. Rather, the court must consider the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." Id. Factors that courts have taken into account in assessing personal jurisdiction in contract cases include; "[1] whether the

contract was negotiated or executed in Illinois and whether it was to be performed in Illinois, [2] whether payment was to be made in Illinois, [3] whether the defendant was ever physically present in Illinois in connection with the contract, [4] whether the Illinois plaintiff or the out of state defendant initiated the transaction, and [5] the occurrence of telephone calls or faxes to and from Illinois." Citadel Group Ltd. v. Merle West Medical Center, Inc., 2007 U.S. Dist. LEXIS 43576, 2007 WL 5160444, at *3 (N.D. Ill. Jun. 13, 2007) (collecting cases).

Feralloy argues that defendant's conduct establishes sufficient minimum contacts to support personal jurisdiction based on their numerous contacts with Illinois, including: (1) Spig sent four payments to Feralloy's headquarters located in Chicago; (2) Cook sent letters and emails to Love and Borzych in Chicago regarding Spig's missed payments and delinquent account; and (3) Arrant called and emailed Love at Feralloy's headquarters in attempts to resolve the delinquency. Feralloy further contends that it was foreseeable that defendants would be subject to suit in Illinois because all of the contacts arose out of the parties' agreement.

Defendants deny having any minimum contacts with Illinois and contend that this action does not arise our of or relate to any nominal contacts defendants had with this forum. They argue that the formation and performance of the agreement all occurred in either Virginia or South Carolina, and that they had no reason to believe that the agreement was with anyone other than Feralloy South Carolina. Defendants further argue that every contact relating to the agreement to purchase steel and their alleged breach of that agreement relates to either Virginia or South Carolina and not Illinois.

When considering the terms of the parties' agreement, their course of dealing, the totality of their prior negotiations, and the contemplated future consequences of their actions, it becomes

8

clear that defendants did not make sufficient minimum contacts with Illinois to warrant a finding of personal jurisdiction. While there are numerous contested facts as to exactly how the parties' agreement was formed, it is undisputed that the agreement was centered on the relationship between Spig and Feralloy South Carolina. The parties do not dispute that the contract was negotiated outside of Illinois, and that aside from Borzych's review and approval of Spig's credit application, the contract was performed outside Illinois. Of particular significance, all of the various meetings between the parties were conducted at either Spig's Bristol facility or Cook's home in Memphis. In addition, none of the price quotes, purchase orders, or bills of lading were issued from or directed to Illinois. Further, neither Cook nor any other Spig representative was every physically present in Illinois in connection with the contract.

In its opposition to defendants' motion, Feralloy stresses telephone calls and email exchanges that Cook had with Borzych in Feralloy's Chicago headquarters and the four advanced payments Spig sent to Chicago. Contrary to Feralloy's assertion these events were not significant enough to confer personal jurisdiction on either defendant. Feralloy is correct that telephone, email, and mail contacts into a forum can establish personal jurisdiction, but Spig's initial contacts with Illinois were originally limited to sending responsive emails and a handful of initial payments to Feralloy's Chicago office. Heritage House Restaurants, Inc. v. Continental Funding Group, Inc., 906 F.2d 276, 281 (7th Cir. 1990)(holding a relationship based on telephone and mail contacts can suffice to justify personal jurisdiction over a defendant under the Illinois long-arm statute). These limited instances of "paying and complaining" and nothing more are insufficient to confer personal jurisdiction here. Asset Allocation and Management Co. v. Western Employers Ins. Co., 892 F.2d 566, 570 (7th Cir. 1989)(holding that contacts with

9

Illinois limited to "paying and complaining" are insufficient to establish personal jurisdiction over an out-of-state resident).

Feralloy further argues that defendants' purposeful contacts with its Chicago office once Spig's account went into arrears are sufficient to support personal jurisdiction. Feralloy contends that Cook made assertive, proactive contact with Feralloy's Chicago headquarters after the December 23, 2008, meeting between Cook, Love, and Borzych. Feralloy emphasizes Cook's letters of January and February 2008 to Love and Borzych proposing alternative solutions to the parties' dispute and Arrant's correspondence with Love in February and March 2008 attempting to resolve the dispute and maintain an ongoing business relationship.

Feralloy has not, however, offered any authority for the proposition that post-breach contacts with Illinois aimed at resolving a dispute support a finding of personal jurisdiction. "Such a conclusion is at odds with the basic principles underlying personal jurisdiction, which focus on whether a defendant purposely availed herself of the privilege of conducting activities within Illinois." Allied Van Lines, Inc. v. Beaman, 2008 U.S. Dist. LEXIS 60250, 2008 WL 4866052, at *4 (N.D. Ill. July 21, 2008). A defendant is not attempting to conduct business in Illinois when he makes purposeful contacts with the state after an alleged breach of contract. Id. The few contacts that defendants had with Illinois were incidental to the underlying contract or came after Spig was already in breach of the contract.

Feralloy has failed to demonstrate that defendants had minimum contacts with Illinois such that exercise or personal jurisdiction would comport with the requirements of due process, or that defendants should have reasonably anticipated being haled into court in Illinois. Accordingly, defendants are not subject to personal jurisdiction in Illinois, and defendants'

motion to dismiss for lack of personal jurisdiction is granted. Because the court does not have personal jurisdiction over any of the counts alleged, the complaint is dismissed in its entirety, and defendants' remaining motions are denied as moot.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss for lack of jurisdiction is granted. Defendants' motions to quash the return of service of the summons, to transfer venue, and to dismiss Count III are denied as moot.

**ENTER:** November 4, 2009

_____
**Robert W. Gettleman
United States District Judge**